558 So.2d 680 (1990)
CIRCLE H BUILDING SUPPLY, INC.
v.
Stephen Lynn DICKEY, et ux.
No. CA 89 0124.
Court of Appeal of Louisiana, First Circuit.
February 21, 1990.
Jeffery LeBlanc, Denham Springs, for Circle H Bldg. Supply, Inc.
Aubrey M. McCleary, Baton Rouge, for Stephen Lynn Dickey, et ux.
Before LOTTINGER, CRAIN and LeBLANC, JJ.
LeBLANC, Judge.
This appeal concerns a claim by a materialman pursuant to the Private Works Act, La.R.S. 9:4801 et seq. The parties stipulated to the following facts.

1.
On or about October 10, 1982, Stephen Lynn Dickey and Sherilyn Stevens Dickey entered into a purchase Agreement with Kelley Gauley wherein they agreed to purchase Lot 10(A) of the re-subdivision of the Spring Ranch Subdivision together with a new house that was to be constructed according to the plans approved by Stephen Lynn Dickey and Sherilyn Stevens Dickey. This Purchase Agreement listed Kelley Gauley as the builder and Stephen Lynn Dickey and Sherilyn Stevens Dickey as purchasers. This agreement to purchase was never recorded or made part of the public record....

2. Kelley Gauley and Donna Gauley purchased Lot 10(A) of the re-subdivision of *681 the Spring Ranch Subdivision from John W. Peak and Jack Odom et al. by Act of Cash Sale dated October 18, 1982....

3.
The house plans for the subject property were approved by Stephen Lynn Dickey and Sherilyn Stevens Dickey. Construction on the subject property commenced sometime after October 10, 1982.

4.
Prior to the commencement of construction on the subject property by Kelley Gauley, Stephen Lynn Dickey and Sherilyn Stephens Dickey had obtained an approved loan on the subject property subject to acceptance and approval of the completed improvements by the Dickeys and Security First Mortgage, Inc.

5.
On October 18, 1982, Kelley C. Gauley and Donna Terrell Gauley executed a Collateral Mortgage to any holder or holders for the sum of FORTY-EIGHT THOUSAND SEVEN HUNDRED AND NO/00 ($48,700.00) DOLLARS on the subject property....

6.
During the construction of the improvements, the plaintiff, Circle H Building Supply, Inc., supplied building materials to Kelley Gauley which materials were incorporated into the construction and the improvements on the subject property. The total amount remaining due and unpaid is EIGHT THOUSAND FIFTY-NINE AND 08/100 ($8,059.08) DOLLARS....

7.
On January 4, 1983, Stephen Lynn Dickey and Sherilyn Stevens Dickey executed a cash sale wherein they purchased the subject property from Kelley Gauley and Donna Gauley.... Concurrent therewith Stephen Lynn Dickey and Sherilyn Stevens Dickey executed a mortgage to Security First Mortgage, Inc....

8.
On February 18, 1983, a Lien affidavit was filed on behalf of Circle H Building Supply, Inc., in the full sum of EIGHT THOUSAND FIFTY-NINE AND 08/100 ($8,059.08) DOLLARS against Kelley Gauley on the subject property.

9.
Kelley Gauley and Donna Gauley subsequently filed for a bankruptcy on March 17, 1983, and received a discharge from bankruptcy court on September 22, 1983. In the schedules and statements, Circle H Building Supply, Inc., was listed as a creditor of Kelley Gauley and Donna Gauley....

10.
On July 25, 1983, a Suit to Enforce a Materialman's Privilege was filed by Circle H Building Supply, Inc., against Stephen Lynn Dickey and Sherilyn Stevens Dickey.

11.
Notice of Lis Pendens was filed in the suit records on March 19, 1984....

12.
On January 16, 1986, a Judgment of this court was rendered extinguishing the Lien and Notice of Lis Pendens, ...
After these stipulations were made, the trial court took this matter under advisement. It ultimately rendered judgment in favor of plaintiff, Circle H Building Supply, Inc., and against defendants, Stephen and Sherilyn Dickey, in solido, in the amount of $8,059.08, the full costs of the building supplies furnished by plaintiff.[1] Defendants have now appealed.
*682 Plaintiff's claim against defendants is based on La.R.S. 9:4802 A(3) which provides:
A. The following persons have a claim against the owner ... to secure payment of the following obligations arising out of the performance of work under the contract:

. . . . .
(3) Sellers, for the price of movables sold to the contractor, or a subcontractor that become component parts of the immovable, or are consumed at the site of the immovable, or are consumed in machinery or equipment used at the site of the immovable.
(Emphasis added)
This provision grants a materialman a claim against an "owner" for the costs of building supplies and materials. The crucial issue herein is whether defendants were "owners" within the meaning of the Private Works Act at the pertinent time in question. La.R.S. 9:4806 A defines an owner for purposes of the Private Works Act as:
An owner, co-owner, naked owner, owner of a predial or personal servitude, possessor, lessee, or other person owning or having the right to the use or enjoyment of an immovable or having an interest therein shall be deemed to be an owner.

(Emphasis added)
Plaintiff contends defendants fell within this definition at the time the building materials were supplied by virtue of the unrecorded purchase agreement they had with the Gauleys. Plaintiff's position is that the existence of this purchase agreement gave defendants an "interest" in the property sufficient to deem them owners within the meaning and intent of the Private Works Act. We disagree.
Pertinent to our consideration of this issue is the well-established rule that lien statutes, being in derogation of common rights, must be strictly construed against the lienors and liberally interpreted in favor of parties whose common rights are thereby infringed upon. Louisiana National Bank v. Triple R. Contractors, 345 So.2d 7 (La.1977); Clegg Concrete v. Bonfanti-Fackrell, Ltd., 532 So.2d 465, 469 (La.App. 1st Cir.1988). Any doubt as to the meaning of a lien statute should be resolved against the party claiming under it and in favor of the party resisting the claim. See, Melyn Industries, Inc. v. Sofec, Inc., 392 So.2d 733 (La.App. 3rd Cir. 1980).
It is not clear from the statutory definition of "owner" that it is intended to include a prospective purchaser who has executed a purchase agreement with the owner of immovable property. In fact, our consideration of this provision in light of the applicable rules of statutory construction, particularly the requirement that lien statutes be strictly construed against the lienor, leads us to conclude the mere existence of a purchase agreement does not give the prospective purchaser an "interest" in the immovable property within the meaning of the Private Works Act. Nothing in the history of the Private Works Act or the jurisprudence interpreting it suggests such a result was intended. Rather, what the purchase agreement actually does is to give the prospective purchaser a cause of action for specific performance in the event of nonperformance by the prospective seller. La. C.C. art. 2462; see, McCulley v. Dublin Construction Co., 234 So.2d 257, 260 (La.App. 4th Cir.), writ refused, 256 La. 375, 236 So.2d 503 (1970).
If we were to reach a contrary result, a prospective purchaser could be held liable as an "owner" by virtue of a purchase agreement, even if the sale never subsequently took place through no fault of his own. Another illustration supporting the conclusion we have reached is provided by La.R.S. 9:4802 C. Under this provision, an owner is relieved of personal liability for claims arising from the performance of a contract by a general contractor if notice of the contract and a performance bond is properly filed. However, prospective purchasers such as defendants can not avail themselves of this protection because they are not a party to a construction contract which could be filed. Their contract was merely to purchase a completed home. Thus, they would be deprived of an opportunity accorded to other "owners" if they are found to fall within the statutory definition.
*683 Further, the judgment against defendants is also improper on another basis. La.R.S. 9:4823 provides that a claim against an owner under the Private Works Act is extinguished if it is not timely filed in accordance with La.R.S. 9:4822. In this case, plaintiff had sixty days from the substantial completion of the work to file a statement of his claim. La.R.S. 9:4822 C(2). According to La.R.S. 9:4822 H, a work is considered substantially complete when:
(1) The last work is performed on, or materials are delivered to the site of the immovable ...; or
(2) The owner accepts the improvement, possesses or occupies the immovable... although minor or inconsequential matters remain to be finished or minor defects or errors in the work are to be remedied.
The burden of proving the timeliness of the claim or privilege is upon the plaintiff. M. Achord Elec. Contractor v. Zeagler, 527 So.2d 51 (La.App. 3rd Cir.1988); Cole Mfg. Co. v. Cumberland Homes, Inc., 428 So.2d 1207 (La.App. 5th Cir.1983).
No evidence establishing the timeliness of plaintiff's claim was presented in the present case. In fact, the only evidence in the record tending to establish any of the facts pertinent to a determination of when the work was "substantially complete" were invoices from plaintiff for the building materials it supplied. However, the latest of these invoices was dated December 17, 1982, more than sixty days prior to the filing of plaintiff's claim. Accordingly, since plaintiff failed to establish that his claim was timely filed as required by La. R.S. 9:4822, the trial court erred in rendering judgment for plaintiff. See, M. Achord Elec. Contractor v. Zeagler, supra.
For the above reasons, the judgment of the trial court is reversed and plaintiff's suit is hereby dismissed. Plaintiff is to bear all costs of appeal.
REVERSED AND RENDERED.
NOTES
[1] La.R.S. 9:4802 B provides that the claim against the owner is secured by a privilege on the immovable property on which the work is performed. However, in this case, the parties stipulated that this lien had been extinguished, and thus this judgment did not affect the immovable property itself.